THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of WILLIAM A. GOBRIGHT, Plaintiff, *v.* 34TH STREET HOTEL CO., INC., Defendant.

THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of EUGENE FOLEY, Plaintiff, *v.* PRINCE GEORGE HOTEL, Defendant.

City Magistrates' Court of New York, Third District, Borough of Manhattan, March 6, 1936.

840

*S. S. Lippman, Assistant Corporation Counsel,* for the plaintiff.

*Charles J. Campbell,* for the defendants.

*Alex Pisciotta, Secretary, Department of Licenses of the City of New York,* as *amicus curiæ.*

*Dorothy Kenyon, Deputy Commissioner of Licenses, Department of Licenses of City of New York,* as *amicus curiæ.*

CAPSHAW, C. M.   These two defendants are before me on stipulations of fact and the question as to whether or not they have violated section 201 of chapter 14 of the Code of Ordinances of the City of New York is raised.

It is stipulated that the 34th Street Hotel Co., Inc., operates the Hotel McAlpin and that it maintains a house laundry employing twenty-six men and women, who do the laundering of the house linen exclusively and do no other kind of laundry work.   It is further stipulated that there is another separate laundry in the same hotel where twelve men and women are employed, who do laundry work exclusively for the guests of the hotel and do no laundering for others.   It is further agreed that the defendant has a license to operate the second mentioned laundry.   The commissioner of licenses of the city of New York has demanded that the defendant return the license applicable to the guest laundry and that the defendant obtain a new license to cover both laundries.

The defendant Prince George Hotel it is stipulated maintains a house laundry in which eighteen persons are employed; that it has machinery consisting of four wash wheels, five extractors (wringers), two flat work ironers, three presses, one curtain frame, and that

the work of this laundry is exclusively that of doing the laundering of the hotel, including its sheets, towels, table linen, etc., and that it does no other laundry. It is further stipulated that the defendant supplies its guest rooms with laundry slips of the Sutton Superior Laundry, Inc. It is agreed that there is a service whereby the hotel guest fills out this list and attaches it to his laundry and usually calls a bellboy who takes it and delivers it to the Sutton Superior Laundry, Inc., when the latter calls for it. When the laundry is returned it is received and receipted for by the defendant who keeps a record of each package, both when it leaves and when it is returned to the linen room of the hotel. It is further agreed that it is the practice for the hotel to charge the guest's account with the amount of the laundry bill of the Sutton Superior Laundry, Inc. It is further agreed that the defendant pays to the Sutton Superior Laundry, Inc., bills rendered weekly by the laundry for the laundry service rendered to guests of the hotel. The defendant deducts from the amount it pays the Sutton Superior Laundry, Inc., a commission of twenty-five per cent from the total amount of the bill. There has been no license obtained by the defendant Prince George Hotel for the laundering done by the Sutton Superior Laundry, Inc.

The question before the court is whether or not the defendant Prince George Hotel should obtain a laundry license for this practice of rendering its service between its guests and the Sutton Superior Laundry, Inc.

It is contended that under section 201, subdivision 2, of the Code of Ordinances that this defendant, Prince George Hotel, is obliged to obtain such a license. That section provides the word " Laundry as used in this chapter shall also be held to include any person dealing in laundry service either as an individual contractor or jobber, or any private laundry maintained or operated in connection with any hotel, restaurant or public institution, whether for the tenants, customers or inmates of the same or otherwise, excepting a hospital or charitable institution where no charge is made for laundry services."

The question is whether this defendant is dealing in laundry service either as an independent contractor or jobber with respect to this laundry service rendered to its guests in connection with the Sutton Superior Laundry, Inc. Laundry service as used in this ordinance seems to me to be limited by the phrase which follows, to wit: " Laundry service either as an independent contractor or jobber," so that the question is whether this defendant is dealing in laundry service as an independent contractor *first*, or *second*, whether it is dealing in laundry service as a jobber. It seems clear to me

that the defendant is not engaged in dealing in laundry service in either respect, either as an independent contractor or jobber. The laundry furnishes its own price list, with its own name printed thereon, and it seems to me to be quite clear that the guest understands that he is sending his laundry to the Sutton Superior Laundry, Inc., and I should suppose that his right of action for damage or loss, if any, would be a contractual one between him and the Sutton Superior Laundry, Inc.; that the hotel in collecting this laundry and delivering it and collecting the bill is acting solely as an agent, and not in my judgment either as an independent contractor or as a jobber. These are the only two kinds of laundry service which is intended to be licensed by the language of this ordinance.

So that, in respect to the laundry service rendered in connection with the Sutton Superior Laundry, Inc., I hold the Prince George Hotel is not guilty and discharge the defendant on that charge.

Now, the question arises with respect to the defendant 34th Street Hotel Co., Inc., and also with respect to the Prince George Hotel as to whether or not each of these defendants should obtain a license to maintain their house laundry. It is contended that the second clause of subdivision 2 of section 201 of the Code of Ordinances, which reads " Laundry as used in this chapter shall also be held to include   *   *   *   any private laundry maintained or operated in connection with any hotel   *   *   *   whether for the tenants, customers or inmates of the same or otherwise," applies to each of the defendants with respect to their house laundries.

Now, it is contended that while this ordinance does state specifically that " any private laundry " maintained or operated in connection with any hotel shall obtain a license, that provision is limited by the phrase which follows: " whether for the tenants, customers or inmates of the same or otherwise," and that since the laundry done by each of these defendants is neither for tenants, customers or inmates, this section does not apply to these respective house laundries. It is also contended in this case that the phrase " or otherwise " means whether the laundry is done for the tenants, customers or inmates or " for the general public or for both," and that, therefore, since neither of these private laundries do laundry for any of the specified persons, it does not come within the meaning of the ordinance. On the other hand, it is contended by the People that this phrase, " whether for the tenants, customers or inmates of the same or otherwise," is not intended as a limitation, but is clearly intended to enlarge upon the general clause, and intended to extend it, and make it general and so as to cover any and all kinds of laundry work done. The defendants argue that the phrase " private laundry " is intended to cover house laundries

which are operated by hotels for doing guests' work and not exclusively the hotels' own linen.

The court finds that within the police power of the city of New York, the ordinance is a reasonable regulation of a business and that it is constitutional to enact rules for regulating the conduct of laundries maintained or operated in connection with hotels, etc., as enacted in the ordinance. The phrase " whether for tenants, customers or inmates of the same or otherwise " it seems to me is not intended as a limitation. It seems to me that the words " whether " and " or otherwise " are intended to enlarge upon and to make more inclusive the wording " private laundry." So, that I think that each of these defendants in maintaining their private laundries are violating the ordinance and are guilty of the charge in this case with respect to the same.

Now, it is further contended by the respective defendants that this ordinance is unconstitutional in that it is discriminatory against a hotel as contrasted with an apartment hotel. That contention is made under subdivision 3 of the same section. The language is, " the provisions of this chapter shall not apply to any female engaged in doing custom laundry work at her home for a regular family trade, nor to any room, rooms or portion thereof, located in a tenement house or other dwelling, in which domestic laundry work is done by or for the occupants of such building exclusively." It is contended that this language would include an " apartment hotel," and that, therefore, if the above subdivision 2 applies to the work of a hotel doing exclusively its own laundry, the ordinance would be an undue infringement under the Constitution and, therefore, unconstitutional.

The court does not agree with this argument. It is of the opinion that it is within the police power of the city, if it so sees fit, to legislate with reference to laundries maintained by hotels and that it can do so without thereby undertaking to regulate all kinds of laundry done, which would include family laundry and individual laundry. This subdivision 3, it seems to me, is intended to exclude family laundry and individual laundry and is not an undue discrimination against, or as contrasted with the regulation of, hotel laundry where undoubtedly more people would have to be employed and more machinery would have to be used and the set-up would be more complicated and there would be more reason with respect to health and sanitation and other reasons why the hotel laundry should be regulated. So, I think this subdivision 3 is intended to mean that, for instance, in apartment houses where each family may not have laundry facilities in its own apartment, but may have to go to a general laundry room or rooms, where they can do their own

family washing, either themselves or through the services of a maid; and this practice is what this subdivision 3 means to exclude and is not intended to apply to. It says: " The provision of this chapter shall not apply to any female engaged in doing custom laundry work at her home for a regular family trade, nor to any room, rooms or portion thereof located in a tenement house or other dwelling." In many apartment houses there is more than one laundry room in order to accommodate, at the same time, the number of tenants. This accommodation for laundry work is common practice. If the city should require licenses for such laundry rooms, then the law would apply to the individual family's and to personal laundry.

So that, it seems to me there is no undue discrimination in making this exception as to laundering done in rooms set aside in apartment houses for laundry work to be done for the tenants of those houses. I find that the ordinance is constitutional, and that it applies to hotel laundries where they are doing exclusively their own laundry.

Since each of these are admittedly test cases I see no good reason for fining the defendants. I, therefore, will give the defendants a suspended sentence.